491 A.2d 1226

**James A. DOLAN, et ux.**

v.

**KENT RESEARCH & MANUFACTURING CO., INC.**

**No. 891, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

May 9, 1985.

58

Rona S. Dadds, Baltimore (Patrick A. O'Doherty, Baltimore, and David M. Williams of Chestertown, on the brief), for appellants.

Gerard F. Miles and Richard H. Lerch, Baltimore (Lerch and Huesman, Baltimore, on the brief), for appellee.

Argued before WILNER, ALPERT and ROSALYN B. BELL, JJ.

ROSALYN B. BELL, Judge.

What started as a typical workmen's compensation claim has become more complex, because the employee sustained his injuries while on property owned by a subsidiary of his employer company. Following the resolution of the claim the employee and his wife sued the subsidiary in tort. As a result, we must consider whether the subsidiary shares the immunity of the parent company by virtue of the relationship of the two corporations. The Workmen's Compensation Act provides that an employer who complies with the Act remains immune from a common-law action in tort. Md.Code Ann., Art. 101, § 15 (1957, 1979 Repl.Vol., 1984 Cum.Supp.). In effect, the Act replaces common-law liability.

Before we describe the accident which gave rise to this suit, we will discuss briefly the background of the two companies involved.

Dixon Valve and Coupling Company (Dixon, appellee/cross-appellant), a Pennsylvania corporation, manufactures and sells industrial parts. Kent Research and Manufacturing, Inc. (KRM)[1], is a wholly-owned subsidiary of Dixon and owns some of the property on which Dixon operates its business. In 1975, KRM purchased a building in Chestertown, Maryland, and leased 25% of it to Dixon in a written contract dated July 1, 1976. Dixon used the space

---

1. In its brief, KRM noted that this is the correct name of the corporation, not "Kent Research & Manufacturing Company, Inc."

as a storage area and as an office from which to operate its subsidiaries. Early in 1978, Dixon began transferring KRM employees and operations to Dixon as a prelude to closing KRM.

James Dolan (appellant/cross-appellee) originally was employed by KRM. In 1978, when Dixon shifted supervisors and salaried employees from the KRM payroll to Dixon's payroll, Dolan became an employee of Dixon. Both before and after the change, Dolan worked in the Chestertown plant and had the same duties.

On June 1, 1978, the manager of the warehouse and shipping department of Dixon asked Dolan to retrieve a part from KRM's plating department. While walking through the area, Dolan tripped on a plating hook that had become lodged between the wooden planks of the floor. In attempting to regain his balance, he slipped on a wet spot on the floor allegedly created by a leaking roof and a leaking chemical storage tank.

Dolan filed a claim for workmen's compensation benefits against Dixon based on the injuries sustained in his fall. At the hearing before the Workmen's Compensation Commission, Dolan and Dixon stipulated that Dolan "sustained an accidental injury arising out of and in the course of his employment...." On July 17, 1979, the commissioner ordered that the claim be held pending a determination of whether the resulting disability was permanent.

■ In 1981, Dolan and his wife [2] filed a declaration against KRM seeking damages in tort for the injuries he sustained on KRM's property. KRM responded by filing a general issue plea and a motion for summary judgment,

---

**2.** Dolan's wife joined the action seeking damages for loss of consortium. Under the Workmen's Compensation Act, she cannot maintain this action against a complying employer. Hence, her recovery depends on whether KRM is protected by the Act. *W.C. & A.N. Miller Dev. Co. v. Honaker,* 40 Md.App. 185, 388 A.2d 562 (1978), *aff'd.,* 285 Md. 216, 401 A.2d 1013 (1979).

In our discussion, we will refer only to Mr. Dolan—appellant and cross-appellee.

claiming it was immune from liability because of its relationship to Dixon. Specifically, KRM alleged that "[it] is an instrumentality of Dixon, and therefore is entitled to the exclusive remedy defense provided to employers under the Workmen's Compensation laws for the injuries alleged...."

The case proceeded to trial and, both at the end of KRM's case and after all the evidence, KRM moved for a directed verdict. These motions asserted KRM's statutory immunity,[3] Dolan's contributory negligence, and the insufficiency of the evidence. The court reserved ruling on the motions and allowed the jury to consider the issues. The jury returned a verdict for Dolan, whereupon KRM moved for judgment notwithstanding the verdict (j.n.o.v.) or a new trial.[4] The Circuit Court for Baltimore City granted the j.n.o.v., finding that KRM was entitled to employer immunity, and it denied the motion for new trial.[5] Dolan and his wife appeal the decision; KRM cross-appeals.

Appellants and cross-appellees raise two alternate issues on appeal:

1. Whether the trial court erred in focusing on the relationship between KRM and Dixon, rather than that between KRM and Dolan, in deciding the question of KRM's immunity from suit under Md.Code Ann., Art. 101, § 15; or,

---

**3.** Md.Code Ann., Art. 101, § 15, *supra; Flood v. Merchants Mut. Ins. Co.,* 230 Md. 373, 187 A.2d 320 (1963).

**4.** The procedural requirements for these motions appeared in Md. Rule 563 (Judgment N.O.V.) and Md.Rule 567 (New Trial) until July 1, 1984, when they became Md.Rules 2–532 (J.N.O.V.) and 2–533 (New Trial). The new rules remain substantively unchanged, except that the time for filing a motion for new trial derives from F.R.Civ.P. 59(b) rather than former Md.Rule 567; the time for filing has changed from three to ten days.

**5.** The court did this in accordance with Md.Rule 563 b 3 (now 2–532(e)), which states:
"If the motion for judgment is granted, the court shall also rule upon any motion for new trial, but the new trial if granted shall be had only if the judgment so entered is reversed on appeal."

2. If the trial court was correct in focusing on the relationship of KRM and Dixon, whether it erred in finding that Dixon controlled KRM sufficiently to entitle KRM to immunity and, therefore, erred in granting KRM's motion for judgment n.o.v.

In addition to arguing that KRM is immune from suit, appellee and cross-appellant presents the following issues for review:

1. Whether appellant failed to establish certain elements of his claim and, therefore, entitled appellee to judgment as a matter of law.

2. Whether the court erred in admitting into evidence the workmen's compensation commission order entered in a proceeding to which KRM was not a party.

3. Whether appellant's claim was barred by the doctrines of assumption of risk and contributory negligence.

4. Whether some of the jury instructions were erroneous and prejudicial to KRM.

Preliminarily, we note that we will reverse the j.n.o.v. and would have reinstated the jury verdict, because the trial court did not apply the correct test in granting the j.n.o.v. Based on the cross-appeal, however, we will reverse the judgment and remand the case for a new trial on the ground that the admission of the workmen's compensation commission order constituted prejudicial error. In reaching these decisions, we discuss the issues presented by the parties on appeal and cross-appeal to provide guidance to the trial court upon remand.

### THE APPEAL

Dolan (appellant) disputes KRM's (appellee) immunity on two bases. First, employer immunity is not determined by the relationship of two corporations with each other. Second, even if that relationship did govern, appellee was not so controlled by Dixon as to share the same immunity.

■ When a court considers a motion for judgment n.o.v., it

"resolves all conflicts in the evidence in favor of the plaintiff and assumes the truth of all evidence and such inferences as may naturally and legitimately be deduced therefrom which tend to support the plaintiff's right to recovery. The evidence ... must, therefore, be considered in the light most favorable to the appellant." (citations omitted).

*Beck v. Baltimore Transit Company,* 190 Md. 506, 509, 58 A.2d 909 (1948); *accord, Stoskin v. Prensky,* 256 Md. 707, 709, 262 A.2d 48 (1970).

The trial court in this case instructed the jury that the issue involved whether Dixon "controlled [KRM] to such an extent that the plaintiff, Mr. Dolan, was in fact an employee of both [Dixon] and [KRM]." The jury returned a verdict in favor of appellant on this issue, which supports an inference that Dixon did not control appellee sufficiently to render it immune from suit and that appellant was not an employee of appellee.

 In granting the j.n.o.v., however, the court did not "resolve all conflicts" in favor of appellant. Rather, it based its ruling solely on the relationship of the two companies with each other. No mention was made of the employer-employee aspect of the issue.

On this ground, we must reverse the j.n.o.v. For reasons that will appear later, we will remand the case on a different ground. As a result of this conclusion, we need not address appellee's assertion that appellant failed to establish the elements of his claim. To provide guidance for the trial court, however, we will explain our decision that the court erred in focusing on the relationship of the two corporations and that it erred in finding that KRM was an instrumentality of Dixon.

### Relationship Between KRM and Dixon

 The issue submitted to the jury improperly focused on the relationship between appellee and Dixon, i.e., whether appellee was an instrumentality of Dixon. The determi-

nation of whether a tort action is precluded by Md.Code Ann., Art. 101, § 15, *supra,* however, depends upon whether appellee was an employer of appellant. *Mackall v. Zayre Corporation,* 293 Md. 221, 443 A.2d 98 (1982).

Appellee contends that the Court of Appeals in *Saf-T-Cab Service, Inc. v. Terry,* 167 Md. 46, 172 A. 608 (1934), did not consider the employer-employee relationship, but determined that one company so controlled another as to render them both employers of the claimant.

Although the Court in *Saf-T-Cab Service, Inc., supra,* did consider the relationship of the two companies, it did so as a means of determining whether they were employers of the claimant. The Court pointed out that, based on the perceived "relationship," "both corporations may be regarded as claimant's employers ... and both may be responsible for compensation to him under the Workmen's Compensation Act." 167 Md. at 49, 172 A. 608. This analysis is consistent with the Court's subsequent recognition that "a person ... may be the employee of two employers." *Mackall,* 293 Md. at 229, 443 A.2d 98; *Keitz v. National Paving and Contracting Company,* 214 Md. 479, 491, 136 A.2d 229 (1957); *see Baur v. Calic,* 166 Md. 387, 398–401, 171 A. 713 (1934).

The Court in *Mackall, supra,* explained the requisite evaluation:

> "In determining whether the employer-employee relationship exists, this Court has established at least five criteria. These include (1) the power to select and hire the employee, (2) the payment of wages, (3) the power to discharge, (4) the power to control the employee's conduct, and (5) whether the work is part of the regular business of the employer. The decisive test in determining whether the relation of employer and employee exists is whether the employer has the right to control and direct the employee in the performance of the work and in the manner in which the work is to be done. If there is evidence to support an inference that more than one

individual or company controls or directs a person in the performance of a given function, the question whether an employer-employee relationship exists is a question of fact to be determined by the jury."

293 Md. at 230, 443 A.2d 98, citing *Greer Lines Co. v. Roberts*, 216 Md. 69, 79–81, 139 A.2d 235 (1958); *Keitz*, 214 Md. at 491, 136 A.2d 229; *Sacker v. Waddell*, 98 Md. 43, 53, 56 A. 399 (1903).

■ In the present case, the jury did not conduct the assessment explicated in *Mackall, supra*. The only issue submitted to them concerning immunity was that involving the instrumentality rule. Although the jurors found that appellee was not immune from the tort action, their decision was based on consideration of the two companies' relationship with each other—whether Dixon so controlled appellee as to render it a "mere instrumentality." Employer immunity, however, depends upon the existence of an employer-employee relationship, i.e., that a company so controls the claimant as to be his employer. *Mackall, supra*.

### Sufficiency Of Dixon Control Over KRM

Not only did the court focus on the wrong relationship, but it erred in finding that Dixon controlled appellee sufficiently to entitle it to immunity under the Workmen's Compensation Act.

Appellee contends that it remains immune from suit because it is "an instrumentality of Dixon," and relies on this Court's discussion in *Dixon v. Process Corporation*, 38 Md.App. 644, 382 A.2d 893, *cert. denied*, 282 Md. 731 (1978). In that case, we noted several factors for "determining whether [a] subsidiary constitutes a mere instrumentality of the parent corporation[:]"

"(1) the presence in both corporations of the same officers or directors; (2) common shareholders; (3) financial support of the subsidiary's operations by the parent; (4) underwriting the incorporation and purchase of all of the capital stock of the subsidiary by the parent corporation;

(5) the fact that the subsidiary was organized with a grossly inadequate capital structure; (6) a joint accounting and payroll system; (7) the subsidiary lacks substantial business contacts with any save the parent and operates solely with assets conveyed by the parent corporation; (8) in the financial statements of the parent, the subsidiary is referred to as a division of the parent corporation or obligations are assumed to be those of the parent; (9) the property of the subsidiary is used by the parent corporation as its own; (10) the individuals who exercise operating control over the subsidiary exercise it in the interest of the parent; and (11) failure to observe the formal requirements attributable to the operation of a subsidiary."

*Id.* 38 Md.App. at 653–54, 382 A.2d 893, quoting Annot., 7 A.L.R.3d 1343, 1355 (1966). Appellee asserts that many of these factors exist in the present case and lists several items, including: every director and officer of appellee is also a director or officer of Dixon; all of appellee's stock belongs to Dixon; Dixon maintains appellee's accounting records; Dixon pays all of appellee's supervisors and managers.

■ Despite these overlapping portions of the two companies, we are not convinced as a matter of law that appellee is an instrumentality of Dixon for purposes of immunity. There is ample evidence that they remained separate entities.

Although the companies shared the same managerial and supervisory staff due to the transfers from appellee to Dixon, appellee retained its own factory employees at the time of appellant's injury. In addition, appellee and Dixon were incorporated separately—Dixon in Pennsylvania, and appellee in Maryland. Perhaps the most significant fact is that appellee, not Dixon, owned the building in Chestertown, Maryland, where appellant was injured. Appellee leased part of the space to Dixon by written contract, which included a rider providing, *inter alia:* that appellee would pay real estate taxes and assessments on the building as

well as insurance; that Dixon would have responsibility for normal maintenance; and that appellee remained responsible for maintaining the roof and the main structure. The lease also contained an indemnification clause. These facts do not appear characteristic of extensive control, but rather indicate that appellee and Dixon are separate entities.

■ Even if we agreed with appellee that Dixon exercised sufficient control to render appellee a mere instrumentality, it would not affect this case. This Court specifically stated in *Dixon, supra,* "that the corporate entity will be disregarded only when necessary to prevent fraud or to enforce a paramount equity." 38 Md.App. at 654, 382 A.2d 893. (citations omitted). Neither situation exists here.

## THE CROSS–APPEAL

### *The Workmen's Compensation Order*

■ KRM (cross-appellant) argues that the trial court erroneously admitted the workmen's compensation commission order reflecting a stipulation between Dolan (cross-appellee), Dixon and Dixon's workmen's compensation carrier. KRM was not a party to that proceeding and, therefore, remains unaffected by it. The only way the order could bind KRM would be if KRM and Dixon are the same entity; this would render KRM immune from the tort action.

Cross-appellee apparently offered the order to show that the stipulation of Dixon as his employer implicitly excluded KRM as an employer. This notion is evidenced by counsel's response to the trial court's inquiry concerning the reason for introducing the order that

"Kent Manufacturing ... [claims] that it was the employer or a joint employer of [Dolan] ... this ... document [was] submitted in an agency proceeding where the company controlled by the two principals who are here before you, have stipulated and agreed that [Dolan] was an employee of Dixon. They say nothing in there about [KRM]. Furthermore, it shows a concession by the cor-

porate officers of Dixon and by the insurer ... that they conceded that [Dolan] was an employee of Dixon...."

\* \* \* \* \* \*

"I want to get in the fact that Dixon Manufacturing stipulated in that proceeding that [Dolan] was their employee...."

■ This explanation overlooks the fact that an employee may have two employers. *Mackall, supra; Keitz, supra; Baur, supra.* For reasons which we will explain, we conclude that the court erred in admitting the order into evidence.

■ First, the order had no *res judicata* or collateral estoppel effect in this case. As in *Mackall, supra,* the causes of action involved are different—the order was issued in an administrative action for workmen's compensation, and this case involves a common-law tort action. In addition, cross-appellant was not a party to the administrative proceedings. Because neither the same cause of action nor the same parties are involved, *res judicata* does not apply. *Mackall,* 293 Md. at 228, 443 A.2d 98.

■ Similarly, collateral estoppel applies to facts or issues actually litigated in the administrative action. The only related issue presented to the Commission concerned Dixon's employer status; cross-appellant's status was not litigated. The case before this Court involves whether cross-appellant is an employer of cross-appellee. The order is not relevant to this issue; hence, it was inadmissible. *Kennedy v. Crouch,* 191 Md. 580, 585, 62 A.2d 582 (1948).

■ Second, cross-appellee's contention conflicts with his position that cross-appellant and Dixon are separate entities. In fact, by asserting that the owners' stipulation concerning Dixon may bind cross-appellant, cross-appellee effectively agrees with the instrumentality argument. He cannot allege the existence of separate entities for immunity purposes and ignore the distinction when introducing evidence.

■ Because the erroneous admission of the order may have affected the outcome of the case, it constitutes prejudicial error. We, therefore, will not reinstate the jury verdict, but will remand the case for a new trial.

### Contributory Negligence/Assumption of Risk

Dolan (cross-appellee) testified at trial that he had observed the dangerous conditions in the department and was aware of the potential hazard created by the slippery floor and by the hooks that sometimes lodged between the floorboards. He further explained that he reported the condition to the owner of the plant and was told "don't talk to me about safety." Based on this evidence, KRM (cross-appellant) argues that cross-appellee assumed the risk of his injury by using the walkway he knew was potentially dangerous. It also claims that cross-appellee failed to exercise reasonable care in crossing the platform, constituting contributory negligence.

■ Whether cross-appellee was contributorily negligent or assumed the risk is a question for the jury to decide. *Maryland Sales & Service Corporation v. Howell,* 19 Md.App. 352, 359, 311 A.2d 432 (1973), *cert. denied,* 271 Md. 739 (1974). Only if the undisputed facts permit but one reasonable conclusion may the court decide the issue. *Hooper v. Mougin,* 263 Md. 630, 634, 284 A.2d 236 (1971).

In the present case, the evidence indicates cross-appellee knew that plating hooks and wet spots sometimes existed in and around the platform. He reported the conditions, and some repairs were made. It remains unclear whether the situation was corrected entirely and whether he had any further opportunity to inspect the area before his injury.

We cannot say that these facts permit only one reasonable conclusion. The question of whether cross-appellee voluntarily chose to enter this dangerous area, and whether there was a reasonable alternative, was properly before the jury, *Rountree v. Lerner Development Company,* 52 Md.

App. 281, 284, 447 A.2d 902 (1982), and they found in favor of cross-appellee.

### Jury Instructions

KRM (cross-appellant) challenges three jury instructions claiming that they constitute prejudicial error. We will address each contention separately.

### –Instrumentality Rule–

Cross-appellant requested a jury instruction that would state in pertinent part:

"The issue for you to decide is whether [KRM] was in fact controlled by [Dixon] or whether [KRM] had no corporate purpose other than furthering the business of [Dixon] ... If you find that [KRM] is controlled by Dixon or has no business purposes other than those of Dixon, your verdict must be in favor of [KRM] and against [Dolan]."

On appeal, cross-appellant complains that the court misstated the instrumentality rule when it instructed the jury to decide whether

"Dixon Valve and Coupling controlled [KRM] to such an extent that Mr. Dolan [cross-appellee] was in fact an employee of both Dixon Valve and Kent Research."

■ The court gave an instruction covering the issue requested by cross-appellant, but stated it correctly. This did not constitute error. Md.Rule 554 b 1 [6].

### –Business Invitee–

Prior to instructing the jury as to the elements required to prove that cross-appellant was liable for cross-appellee's injuries, the court explained:

"Mr. Dolan is classified as a business invitee on those premises ... An invitee is a person on the property of another for the interests of the owner or occupier of the property. An owner must use ordinary care to see that

---

6. This provision appears in Md.Rule 2–520(c), effective July 1, 1984.

those portions of the property which the invitee ... reasonably may be expected to use are safe and, if it [sic] is not safe, to give that invitee reasonable notice of the unsafe condition. The landlord who sets aside a portion of the property or reserves facilities for the common use of the tenant owes the tenant—by tenant, I mean, the tenant and the people who are invited or worked there on his behalf. In this case, the tenant was Dixon Valve and Coupling Company, and by that we're including Mr. Dolan. The landlord who sets aside a portion of the property or reserves facilities for the common use of his tenant—in that case it is [Dixon], and Mr. Dolan was an employee and he is entitled to that—owes the tenant a duty to exercise ordinary care in keeping those portions or facilities in a safe condition or, if not safe, to notify the tenant of the defect or unsafe condition. This duty extends ... to the invitee or others on the property or using the facility within the right given to the tenant. In this case, the tenant was [Dixon] and, as such, Mr. Dolan is entitled to the same rights as the tenant is. He was using them with the permission and consent, invitation of the tenant. So he's entitled to the same rights as the tenant."

At the conclusion of the instructions, counsel for cross-appellant objected to this instruction, stating:

COUNSEL: "We would except to the instruction that [cross-appellee Dolan] was in fact an invitee, as a matter of law.

THE COURT: "Didn't you agree to that?

COUNSEL: "No, Your Honor. I said the instruction should be given about what an invitee was, about what an invitee is."

■ Cross-appellant now contends that this designation of cross-appellee as a business invitee was erroneous insofar as it was for the jury to determine his status and the accompanying duty owed to him. We disagree; based on

the evidence Dolan's status was that of a business invitee, as a matter of law.

### –Reimbursement of Insurer–

Cross-appellant alleges that the court should not have instructed the jury that their award would reimburse the insurance carrier for any sums it paid to cross-appellee under the workmen's compensation order. The insurance carrier was not a party to this suit, and no evidence was presented regarding the amount of workmen's compensation benefits received by cross-appellee. As a result, the instruction "may have contributed to a larger verdict than proper since the jury would have speculated about the amount of the award and may have wanted to give Dolan [cross-appellee] additional compensation in addition to the award."

Neither party refers us to any case that clearly precludes a court from instructing the jury that the insurer will be reimbursed from the amount they award. Each relies on *Kilgore v. Collins*, 233 Md. 147, 195 A.2d 703 (1963): cross-appellant interprets the case as precluding the instruction; cross-appellee claims it allows the instruction.

In *Kilgore, supra*, the Court of Appeals preliminarily noted that the party asserting error "has not shown that either the challenged evidence or the instructions complained of in fact caused prejudice, nor has he pointed out facts from which an inference ... can be drawn" that they did. *Id.* at 153, 195 A.2d 703. The jury had been told, not only that its award would reimburse the insurer, but also the amount of the payments received as workmen's compensation and medical expenses of the claimant. The Court explained the propriety of the instruction:

"[I]f the jury was not to be misled into thinking that its verdict would be in addition to what had already been received by the workman, it was necessary that it be told that the insurer would be reimbursed from the verdict, if large enough."

*Id.* at 158, 195 A.2d 703 (footnote omitted). Ultimately, the Court held that, although the jury may not have needed to consider the matter, it was not prejudicial to the case. *Id.* at 159, 195 A.2d 703.

 In the present case, cross-appellant merely states the instruction "may have contributed to a larger verdict than proper...." It remains unclear whether any additional information was presented to the jury. We agree with the reasoning of *Kilgore, supra,* and hold that there was no prejudice in granting the instruction.

## CONCLUSION

The jury and the trial court considered the case based on the relationship of the two corporations, rather than deciding whether appellant and cross-appellee was an employee of appellee and cross-appellant. Furthermore, the trial court did not apply the proper test for granting the j.n.o.v., and it erred in admitting the workmen's compensation commission order into evidence. We, therefore, reverse the j.n.o.v. and remand the case for a new trial.

JUDGMENT REVERSED. CASE REMANDED FOR NEW TRIAL. COSTS TO BE BORNE EQUALLY BY APPELLANTS/CROSS–APPELLEES AND APPELLEE/CROSS–APPELLANT.