671 A.2d 72

Ethel A. IMBRAGUGLIO, Individually, etc.

v.

The GREAT ATLANTIC AND PACIFIC
TEA COMPANY, INC., et al.

No. 668, Sept. Term, 1995.

Court of Special Appeals of Maryland.

Feb. 6, 1996.

Eugene A. Shapiro, P.A., Baltimore, for Appellant.

Rudolph L. Rose (Severn E.S. Miller and Semmes, Bowen & Semmes, on the brief), Baltimore, for Appellees.

Argued before FISCHER, CATHELL and MURPHY, JJ.

CATHELL, Judge.

Following the death of her husband, Ethel Imbraguglio, appellant, brought this wrongful death action against The Great Atlantic and Pacific Tea Company (A & P) and Super Fresh Food Market of Maryland, Inc. (Super Fresh) (collectively, appellees). Appellant elected to have this matter tried by a jury. Finding that the action was barred by the Maryland Workers' Compensation Act (the Act), the Circuit Court for Baltimore City granted summary judgment in favor of appellees. On appeal from that grant, appellant asks:

I. Is A & P a third party under the Workers' Compensation Statues [sic] and as such, amenable to suit?

[II]. Was Super Fresh of Maryland the Decedent's statutory employer at the time of his death?

For the reasons to be set forth, the grant of summary judgment at this juncture was inappropriate, and we shall, accordingly, reverse the entry of summary judgment in favor of both appellees and remand this case to the circuit court.

## The Facts

A & P, Super Fresh, and Supermarket Distribution Services, Inc. (SDS) are distinct corporate entities; both Super Fresh and SDS are wholly owned subsidiaries of A & P. It appears that, in Maryland, Super Fresh operates supermarkets on behalf of A & P; SDS provides the warehousing and distribution for those markets. For purposes of workers' compensation claims, A & P is self-insured, as well as the insurer for both SDS and Super Fresh.

Salvatore Imbraguglio, appellant's decedent, was employed as a forklift operator by SDS. On April 21, 1992, he was working at a warehouse owned by A & P and managed by employees of Super Fresh. On the day in question, one David Williams lifted appellant's decedent, who was standing on a pallet, some thirteen to twenty feet into the air using a forklift, in order to reposition some stock. When some of the boxes shifted, appellant's decedent lost his balance. He subsequently fell to the ground, thereby sustaining his fatal injuries.

As a result of this occurrence, appellant filed a Dependent's Claim with the Maryland Workers' Compensation Commission (the Commission). A hearing was held, and the Commission allowed appellant's claim. Appellant was awarded weekly compensation of $355 and funeral expenses of $2,500. Subsequently, on appeal, appellant and SDS compromised and settled the claim; A & P, as SDS's insurer, was responsible for making specified payments to appellant.

Thereafter, appellant brought the case *sub judice* based upon the alleged negligence of appellees. She contends that A & P is liable as the owner of the property upon which

appellant's decedent met his demise, and that both A & P and Super Fresh are liable based upon their failure to supervise properly the activities at the warehouse. Following discovery, appellees made a Motion for Summary Judgment. The circuit court, as stated, found that, as a matter of law, the action was barred by the Act. At the conclusion of the motion hearing, the circuit court stated:

> I'm going to grant the motion because I think Maryland law has long been settled on this issue and it's the intent to— that one employer, of course, which is not necessarily true in this case, but one employer shall be the—pay Workmen's Compensation, the idea being to protect [employers] from multiplicity of suits and also to protect the employee from lack of liability. That was the original theory of Workmen's Compensation.
>
> In recent years, third-party actions have developed to the point where we have to look at the corporate structure to determine whether or not there is actual division of authority and the division of operation. In this particular case, I don't think there is. It looks to me like one consolidated employment, of which there are separate corporations for whatever reasons which are not apparent to me in the record. It could be tax purposes.

In its subsequent Order, the court granted the motion "for the reasons stated by [appellees] in support of their motion, and for the reasons stated on the record."

In their Motion for Summary Judgment and at the hearing, appellees argued the same grounds that they now press on appeal that they are immune from suit based upon the status of A & P and Super Fresh as SDS's workers' compensation insurer and appellant's decedent's statutory employer, respectively.

As previously stated, the court granted appellees' motion. Appellant has noted this timely appeal therefrom.

### Standard of Review

Maryland Rule 2–501(a) provides that: "Any party may file at any time a motion for summary judgment on all or

part of an action on the ground that there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law." "The purpose of the summary judgment procedure is to decide whether there is an issue of fact sufficiently material to be tried, not to try the case or to resolve factual disputes." *Hartford Ins. Co. v. Manor Inn of Bethesda, Inc.,* 335 Md. 135, 144, 642 A.2d 219 (1994); *Maryland Casualty Co. v. Lorkovic,* 100 Md.App. 333, 353–55, 641 A.2d 924 (1994). It is "not intended to substitute for a trial but merely provides a mechanism for determination of whether there exist material facts in dispute requiring a trial." *Lorkovic,* 100 Md.App. at 353–54, 641 A.2d 924. When ruling on a motion for summary judgment, "the trial court must address two separate issues: whether the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine dispute as to any material fact and whether the movant is entitled to judgment as a matter of law." *Syme v. Marks Rentals, Inc.,* 70 Md.App. 235, 238, 520 A.2d 1110 (1987).

■ "When the moving party has provided the court with sufficient grounds for summary judgment, the opposing party must demonstrate that there is a genuine dispute of material fact by presenting facts that would be admissible in evidence." *Gross v. Sussex, Inc.,* 332 Md. 247, 255, 630 A.2d 1156 (1993); *Miller v. Fairchild Indus., Inc.,* 97 Md.App. 324, 340, 629 A.2d 1293, *cert. denied,* 333 Md. 172, 634 A.2d 46 (1993). The review of the grant of summary judgment, therefore, involves the determination of whether a dispute of material fact indeed exists, *Gross,* 332 Md. at 255, 630 A.2d 1156, and "whether the trial court was legally correct," *Heat & Power Corp. v. Air Prods. & Chems., Inc.,* 320 Md. 584, 592, 578 A.2d 1202 (1990). With this standard in mind, we turn to the instant appeal.

### Discussion

■ Against one's employer, absent an intentional act to injure the employee, an employee's exclusive remedy is

through Maryland's workers' compensation statutes. Md. Code (1991 Repl.Vol., 1995 Cum.Supp.), § 9–509 of the Labor & Employment Article;[1] *Johnson v. Mountaire Farms, Inc.,* 305 Md. 246, 253, 503 A.2d 708 (1986); *Anderson v. Bimblich,* 67 Md.App. 612, 616, 508 A.2d 1014 (1986). "Since the worker's sole remedy against the employer is a claim under the Act, the employer is considered to be 'immune' from suit at law." *Brady v. Ralph Parsons Co.,* 308 Md. 486, 498, 520 A.2d 717 (1987); *see Belcher v. T. Rowe Price Found.,* 329 Md. 709, 736, 621 A.2d 872 (1993). The invocation of § 9–509 and its attendant immunity as a defense to a third-party action has been dubbed the "exclusivity" or "exclusive remedy" defense.

Nevertheless, an action at law may be sustained by the injured employee or his representative against certain third parties. §§ 9–901, 9–902; *Brady,* 308 Md. at 498, 520 A.2d 717. Under § 9–901, the employee or his representative has the right to elect to proceed against a third party who is responsible for the injury:

When a person other than an employer is liable for the injury or death of a covered employee . . . in case of death, the personal representative or dependents of the covered employee may:

(1) file a claim for compensation against the employer under this title; or

(2) bring an action for damages against the person liable for the injury or death or, in case of joint tort feasors, against each joint tort feasor.

This right is not extinguished by the employee's receipt of compensation under the Act. In relevant part, § 9–902 provides:

(c) *Action by covered employee or dependents.*—If the self-insured employer [or] insurer . . . does not bring an action against the third party . . . after the Commission makes an award, the covered employee or, in case of death,

---

**1.** All statutory references are to the Labor & Employment Article of the Maryland Code.

the dependents of the covered employee may bring an action for damages against the third party.

*See, e.g., South Down Liquors, Inc. v. Hayes,* 323 Md. 4, 6, 590 A.2d 161 (1991) (noting that both employee and workers' compensation insurer have right to bring action against third-party tortfeasor). As this discussion suggests, whether appellees are immune from a third-party action as a matter of law or amenable to such a suit by appellant is the focal point of the instant appeal.

### Dual Employment

In part, the circuit court granted summary judgment upon finding that appellant's decedent was in "one consolidated employment," or a dual employment. Under this approach, the circuit court found that appellant's decedent was, in effect, an employee of A & P, Super Fresh, and SDS. If this was indeed the case, then A & P and Super Fresh are immune from suit to the same extent as SDS. The Court of Appeals, however, "has frequently reiterated that the question whether an employer-employee relationship exists is one for the jury to determine." *Mackall v. Zayre Corp.,* 293 Md. 221, 230, 443 A.2d 98 (1982). "If there is evidence to support an inference that more than one individual or company controls or directs a person in the performance of a given function, the question whether an employer-employee relationship exists is a question of fact to be determined by the jury." *Id.* at 230, 443 A.2d 98 (citing *Greer Lines Co. v. Roberts,* 216 Md. 69, 80–81, 139 A.2d 235 (1958)).

The Court has adopted five criteria for use in determining whether an employer-employee relationship exists. They are:

(1) the power to select and hire the employee,

(2) the payment of wages,

(3) the power to discharge,

(4) the power to control the employee's conduct, and

(5) whether the work is part of the regular business of the employer. ·

*Baker, Watts & Co. v. Miles & Stockbridge,* 95 Md.App. 145, 180, 620 A.2d 356 (1993) (quoting *Whitehead v. Safway Steel Prods., Inc.,* 304 Md. 67, 77–78, 497 A.2d 803 (1985)). The decisive test is whether "the employer has the right to control and direct the employee in the performance of the work and in the manner in which the work is done." *Mackall,* 293 Md. at 230, 443 A.2d 98; *Baker,* 95 Md.App. at 180, 620 A.2d 356.

■ Turning to the case *sub judice,* A & P, by deliberate choice, created SDS and Super Fresh as distinct corporate entities. While appellees have shown that, on the day he was fatally injured, appellant's decedent was working in a warehouse owned by A & P and managed by Super Fresh, at this juncture, appellees have not put forward a sufficient showing from which we can conclusively determine that appellant's decedent was in a dual employment. Thus, the grant of summary judgment on this ground was inappropriate. Determination of this question was for the jury. *Mackall,* 293 Md. at 230, 443 A.2d 98.

### A & P

■ Appellant brought suit against A & P, alleging its negligence as a property owner and operator of the warehouse, and not, we note, in its capacity as an insurer. Both before the circuit court and here on appeal, citing *Flood v. Merchants Mut. Ins. Co.,* 230 Md. 373, 187 A.2d 320 (1963), and *Donohue v. Maryland Casualty Co.,* 248 F.Supp. 588 (D.Md.1965), *aff'd,* 363 F.2d 442 (4th Cir.1966), A & P contends that it is immune from suit as a third party because it is SDS's workers' compensation insurer. Relying exclusively upon *Dolan v. Kent Research & Mfg. Co.,* 63 Md.App. 55, 491 A.2d 1226, *cert. denied,* 304 Md. 298, 498 A.2d 1185 (1985), appellant argues vigorously that A & P is a proper third party.

Appellant has confused and transposed the relationship of the entities in *Dolan.* She mistakenly reports that "in *Dolan,* the Plaintiff, an employee of the subsidiary corporation was

held to have a justiciable cause of action against the parent corporation where the employee sustained injury on property owned by the parent." In fact, in *Dolan*, the employee "sustained his injuries while on property *owned by a subsidiary* of his employer company." 63 Md.App. at 59, 491 A.2d 1226 (emphasis added). That was the converse of the situation before us. Following resolution of the employee's workers' compensation claim, the employee sued the subsidiary in tort for its premises liability. The subsidiary claimed it was immune from suit based upon the parent/subsidiary relationship of the two companies—that is, the subsidiary claimed that it was an "instrumentality" of the parent (the employer) "and therefore [was] entitled to the exclusive remedy defense provided to employers under the Work[ers'] Compensation laws." *Id.* at 61, 491 A.2d 1226. The *Dolan* Court found that, regardless of whether the subsidiary was an instrumentality of the parent, the grant of judgment n.o.v. in the subsidiary's favor was in error because it was possible that the injured worker could be found to be an employee of both the parent and the subsidiary, and that issue had yet to be resolved. As appellee correctly points out, "the *Dolan* court explicitly found only that a subsidiary of an Employer is not automatically immune from a third-party suit. The *Dolan* court never considered whether the parent corporation of an Employer is immune."

The primary distinction between *Dolan* and the case *sub judice* is the relationship between A & P and SDS. It is more than merely parent/subsidiary; it is also an insurer/insured relationship. Thus, *Dolan* is not dispositive of appellant's argument.

In *Flood, supra*, 230 Md. at 379, 187 A.2d 320, the Court of Appeals held that an employee may not maintain a subsequent action in tort for negligence against the workers' compensation insurer of his employer for the alleged malpractice of physicians selected by the insurer for the treatment of the employee's injuries. *Accord Young v. Hartford Accident & Indem. Co.*, 303 Md. 182, 190–96, 492 A.2d 1270 (1985) (applying *Flood* and holding that the insurer was entitled to the

exclusivity defense against a negligence claim because the injuries suffered as a result of the insurer's alleged negligence were an aggravation of the original work-related injury). Similarly, in *Donohue, supra,* 248 F.Supp. at 589–91, on its facts, the district court held that the Act does not permit a deceased employee's representatives to sue the employer's insurer on the basis that the carrier negligently performed its duty to inspect and to report unsafe conditions in the employee's workplace as it was required to do under the insurance contract.

From these cases, it can be reasoned that, when an insurer is performing the duties or functions of an insurer under the Act—*e.g.,* selecting physicians—or duties on behalf of the insured under the terms of their insurance contract—*e.g.,* making inspections and reporting problems—the employer's workers' compensation insurer is entitled to immunity to the same extent as the employer itself. *See* Maurice J. Pressman, *Workmen's Compensation in Maryland* § 6–104 (1977); *see also* 2A Arthur Larson, *The Law of Workmen's Compensation* § 72.96–.97 (1992) (discussing *Flood* and *Donohue* and suggesting that courts look to the function the insurer was performing at the time of the alleged negligence). The factual circumstances of these cases have only required consideration of the application of the exclusivity defense by an insurer when the insurer's alleged negligence occurred while the insurer was performing a duty under either the Act or the insurance contract. The case *sub judice* presents us with a unique situation—the employee was fatally injured while working on property owned by his employer's workers' compensation insurer. Appellant alleges that it was the negligence of the property owner that gave rise to the injury in the first instance, not that the insurer's negligence in some way compounded his accidental injury. The alleged negligence is in no way related to A & P's status as SDS's insurer. Rather, it is in the nature of premises liability and failure to supervise. In that sense, the instant case is no different than any other case presenting similar circumstances. What makes it different is that the allegedly negligent party coincidentally happens

to be the workers' compensation insurer of appellant's decedent's employer. Appellant's allegations are unrelated to any duty necessarily imposed on A & P in its capacity as an insurer under the Act, and, because we do not know the terms of either the insurance agreement or the agreement between SDS and A & P on the use of the warehouse, we cannot determine, as a matter of law, what duties A & P had assumed in its capacity as either SDS's workers' compensation insurer or as its landlord.

It was not the employer's negligence that is alleged to have caused the demise of appellant's decedent. Further, it was not within his employer's workplace that he was injured. Rather, it is alleged that it is the result of the property owner's negligence. Therefore, the property owner is a proper third party against whom appellant may proceed. But for A & P's status as SDS's workers' compensation insurer, there is little question that it would be a viable third party for appellant's action. Thus, we shall hold that A & P's immunity is limited to the extent that it was functioning as SDS's insurer and to the extent it may have negligently performed duties it had undertaken pursuant to the insurance contract. In the absence of these agreements in the record, we cannot conclude that the circuit court was legally correct when it found A & P to be immune from suit.

### Super Fresh

As previously discussed, an injured employee is permitted to sue a person other than his employer for tort damages. If, however, that third party is determined to be the statutory employer of the injured worker, then that third party is immune from suit to the same extent as the employee's direct employer, and the employee's recovery is limited to compensation under the Act. *Lathroum v. Potomac Elec. Power Co.*, 309 Md. 445, 448, 524 A.2d 1228 (1987). Section 9–508, the statutory employer provision, provides:

(a) *In general.*—A principal contractor is liable to pay to a covered employee or the dependents of the covered employee any compensation that the principal contractor would

have been liable to pay had the covered employee been employed directly by the principal contractor if:

(1) the principal contractor undertakes to perform any work that is part of the business, occupation, or trade of the principal contractor;

(2) the principal contractor contracts with a subcontractor for the execution by or under the subcontractor of all or part of the work undertaken by the principal contractor; and

(3) the covered employee is employed in the execution of that work.

As interpreted by the Court of Appeals, in order to establish statutory employer status under § 9–508, a party must show:

(1) a principal contractor

(2) who has contracted to perform work

(3) which is a part of his trade, business or occupation; and

(4) who has contracted with any other party as a subcontractor for the execution by or under the subcontractor of the whole or any part of such work.

*Honaker v. W.C. & A.N. Miller Dev. Co.,* 278 Md. 453, 460, 365 A.2d 287 (1976) (footnote omitted); *Anderson, supra,* 67 Md. App. at 617, 508 A.2d 1014. The statute, therefore,

clearly requires two contracts, one between the principal contractor and a third party whereby it is agreed that the principal contractor will execute certain work for the third party, and another between the principal contractor and a person as subcontractor whereby the subcontractor agrees to do the whole or part of such work for the principal contractor.

*Honaker,* 278 Md. at 460, 365 A.2d 287. Furthermore, "the contract between the principal contractor and the subcontractor must result from the original contract between the principal contractor and the third party." *Anderson,* 67 Md.App. at 618, 508 A.2d 1014. The subcontract must be for work "which is a part of the principal contractor's trade, business or occupation." *Inner Harbor Warehouse & Distrib., Inc. v.*

*Myers,* 80 Md.App. 1, 13, 559 A.2d 376 (1989), *aff'd,* 321 Md. 363, 582 A.2d 1244 (1990); *Para v. Richards Group Ltd. Partnership,* 339 Md. 241, 258, 661 A.2d 737 (1995); *Lathroum,* 309 Md. at 451, 524 A.2d 1228. In *Para,* the Court reaffirmed its "prior holdings that there must be two contracts—one by which the principal contractor becomes obligated to do work and one by which part of his work is delegated to a subcontractor." 339 Md. at 258, 661 A.2d 737.

Super Fresh contends that, under the Act, it is the statutory employer of appellant's decedent and, hence, it is liable only for compensation benefits. Within this context, appellees assert that Super Fresh, the principal contractor, is under contract with A & P, the third party, and with SDS, the subcontractor. Under this arrangement, it is argued that A & P has contracted with Super Fresh to run supermarkets on their behalf in Maryland, and Super Fresh has, in turn, subcontracted with SDS to provide distribution and warehousing for the operation of those markets. As the only evidence of these contracts, the record contains the affidavit of one Mary Ellen Offer, a Vice President of A & P, which states that "a contractual relationship" exists between SDS and Super Fresh and between Super Fresh and A & P. In blanket fashion, the affidavit states:

> 4. [SDS] and Super Fresh ... have a contractual relationship: [SDS] provides warehousing and distribution services to Super Fresh....

> 5. Super Fresh ... and [A & P] have a contractual relationship: Super Fresh ... operates the retail supermarket operations of [A & P] in the state of Maryland.

Additionally, the record contains several forms that appear to be merchandise order forms and invoices, but which, we note, do not in any way reference either SDS or Super Fresh. We also note that before the circuit court, appellees stated that, while there was no explicit principal or subcontract between SDS, Super Fresh, and A & P, there is a contractual relationship between them, as evidenced by the order forms and invoices. Appellant contests the existence of the required relationships between SDS, Super Fresh, and A & P.

In *Honaker*, the Court of Appeals defined a subcontract as "[a] contract with a person who owes labor or services under another contract, to perform some or all of the services or labor due." 278 Md. at 460, 365 A.2d 287 (emphasis omitted). Based upon its review of the record, the *Honaker* Court reversed the grant of summary judgment in favor of the party seeking to be declared the statutory employer on the grounds that there was no evidence that the contract with the alleged subcontractor resulted from a third-party contract. *Anderson*, 67 Md.App. at 618, 508 A.2d 1014. Consistent with this is *Roland ex rel. Hartford Accident & Indem. Co. v. Lloyd E. Mitchell, Inc.*, 221 Md. 11, 155 A.2d 691 (1959). There, upon a motion for summary judgment, a construction contractor was found to be the statutory employer of the injured worker and, thus, immune from third-party suit. On appeal, the Court of Appeals could not determine whether the contract between the worker's employer and the general contractor was that of a buyer and seller or a subcontract. Because the nature of the contract could not be conclusively determined, the Court held that summary judgment was not properly entered. *Id.* at 19, 155 A.2d 691; *Lathroum*, 309 Md. at 455, 524 A.2d 1228 (holding that grant of summary judgment in favor of principal contractor was in error because it had not shown that it had a contract with a third party).

We similarly hold that sufficient evidence has not been presented for us to conclude as a matter of law that a subcontract exists between Super Fresh and SDS.[2] Absent the existence of this relationship, Super Fresh could not have and cannot establish that it was the statutory employer of appellant's decedent. The only evidence before the circuit court on this point was Offer's affidavit, which, we note, states only that a contractual relationship exists between Super Fresh and SDS (from which but one inference that can be drawn is that Super Fresh had subcontracted with SDS), and

---

**2.** By focusing our discussion on this point, we do not mean to imply that Super Fresh has made a sufficient showing as to the other three requirements.

the order forms and invoices, which do not even refer to either Super Fresh or SDS, let alone lead us to believe that SDS was the subcontractor of Super Fresh in respect to warehousing and distribution. If anything, assuming that these documents are representative of the order forms and invoices flowing back and forth between Super Fresh and SDS, the most likely inference to be drawn from them is that Super Fresh and SDS entered into a multitude of buy-and-sell contracts and not a contract for warehousing and distribution. Moreover, we find no indication that part of Super Fresh's contractual obligation to A & P (if one in fact exists) was delegated to SDS. Thus, the existence of the relationships necessary for a finding that Super Fresh was the statutory employer of appellant's decedent is a material fact still in dispute. On the record submitted to us for consideration, we cannot determine decisively whether SDS's contract, whether written or oral, with Super Fresh (if one exists) is a contract for warehousing and distribution or whether it is a subcontract made under Super Fresh's contract with A & P. Summary judgment, therefore, was inappropriate.

**JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY; COSTS TO BE PAID BY APPELLEES.**