697 A.2d 885

The GREAT ATLANTIC & PACIFIC
TEA COMPANY, INC., et al.,

v.

Ethel A. IMBRAGUGLIO, et al.

No. 33, Sept. Term, 1996.

Court of Appeals of Maryland.

July 28, 1997.

Reconsideration Denied Sept. 5, 1997.

574

David A. Skomba (Rudolph L. Rose, Erin M. Masson, Semmes, Bowen & Semmes, on brief), Baltimore, for Petitioner.

Eugene A. Shapiro (Darren L. Kadish, Jeffrey R. Moffet, Shapiro & Dorman, P.A., on brief), Baltimore, for Respondents.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, RAKER and WILNER, JJ.

KARWACKI, Judge.

Under Maryland Code (1991 Repl.Vol., 1996 Supp.), § 9–509 of the Labor and Employment Article,[1] colloquially dubbed the "exclusivity provisions" of Maryland's Workers' Compensation Act ("Workers' Compensation Act" or "the Act"), employers are immune, save for two exceptions, from suit by their employees for work-related injuries. Injured employees' sole recourse against their employers is ordinarily under the benefit provisions of the Workers' Compensation Act. Petitioners, the Great Atlantic and Pacific Tea Company, Inc. ("A & P")

---

[1]. Unless otherwise indicated, all statutory references in this opinion will be to the Maryland Workers' Compensation Act. Maryland Code (1991 Repl.Vol., 1996 Supp.), §§ 9–101 through 9–1201 of the Labor and Employment Article.

and Super Fresh Markets of Maryland, Inc. ("Super Fresh") have raised several issues in the instant case. A & P asks whether § 9–509 of the Act bars an injured employee from maintaining an action in tort against a workers' compensation insurer for injuring the employee by negligently maintaining real property that the insurer owns. We shall hold that § 9–509 does not bar such a suit. We shall also hold that the record does not conclusively establish as a matter of law that Super Fresh was the statutory employer of the injured employee and therefore immune from suit. For the reasons articulated below, we shall affirm the judgment of the Court of Special Appeals and remand the case for further proceedings consistent with this opinion.

## I.

The undisputed facts are as follows. On April 21, 1992, Salvatore Imbraguglio, Respondent's husband, fell approximately fifteen to twenty feet while attempting to position some boxes in a warehouse with the assistance of a fellow employee and a "pallet jack." Mr. Imbraguglio died two days later from his injuries. At the time of the accident, the decedent was working as a forklift operator for Supermarket Distribution Services, Inc. ("SDS"), a corporate entity distinct from, but wholly owned subsidiary of, A & P. The accident occurred in a warehouse owned by A & P, but managed by employees of Super Fresh, another corporate entity distinct from, but wholly owned subsidiary of, A & P. The record reveals that in Maryland, Super Fresh operates supermarkets on A & P's behalf, while SDS provides warehousing and distribution services for those markets. A & P is self-insured for workers' compensation purposes and is also the workers' compensation insurer for both SDS and Super Fresh.

As the result of the accident, Respondent filed a Dependant's claim with Maryland's Workers' Compensation Commission ("the Commission"). Following a hearing, the Commission concluded that Salvatore Imbraguglio sustained an injury arising out of and in the course of his employment that ultimately resulted in his death. Respondent, as the wholly

dependent widow of the decedent,[2] was awarded weekly death benefits of $355, and funeral expenses of $2,500, payable by the employer, SDS. Shortly thereafter, SDS and Respondent settled the claim for a lump sum amount. A & P, as the workers' compensation insurer for SDS, paid all workers' compensation benefits, including the settlement amount.[3]

Respondent then brought the action below in the Circuit Court for Baltimore City. In her original and Amended Complaint, Respondent alleged premises liability on the part of A & P and joint liability on the part of A & P and Super Fresh for failing to provide proper supervision of the activities at the warehouse where her husband was killed.

In a Motion for Summary Judgment, A & P maintained that Respondent's sole remedy was under the workers' compensation statute. A & P insisted that it was immune from suit by virtue of its status as the workers' compensation insurer for SDS and Super Fresh. Seeking the same immunity from suit, Super Fresh claimed that it was Salvatore Imbraguglio's statutory employer. After hearing argument on the issue, the circuit court granted summary judgment in favor of A & P and Super Fresh, concluding that they, along with SDS, were the decedent's consolidated employers and therefore entitled to tort immunity under the exclusivity provisions of the Act.

Respondent filed a timely appeal to the Court of Special Appeals. The intermediate appellate court reversed the judgment of the circuit court and concluded that A & P's coinciden-

---

**2.** *See* § 9–681 of the Act, which delineates workers' compensation death benefits of wholly dependent survivors.

**3.** Section 9–722 of the Act provides in relevant part:
"**§ 9–722. Claim settlement.**
(a) *In general.*—Subject to approval by the Commission under subsection (b) of this section, after a claim has been filed by a covered employee or the dependents of a covered employee, the covered employee or dependent may enter into an agreement for the final compromise and settlement of any current or future claim under this title with:
\* \* \*
(2) the insurer of the employer;
\* \* \* \*"

tal status as SDS and Super Fresh's workers' compensation insurer did not necessarily shield it from suit. *Imbraguglio v. Great Atlantic and Pacific Tea Co.*, 108 Md.App. 151, 671 A.2d 72 (1996). The court instead held that

"A & P's immunity is limited to the extent that it was functioning as SDS's insurer and to the extent it may have negligently performed duties it had undertaken pursuant to the insurance contract. In the absence of these agreements in the record, we cannot conclude that the circuit court was legally correct when it found A & P to be immune from suit."

*Imbraguglio*, 108 Md.App. at 163, 671 A.2d at 78. The court also concluded that a sufficient material factual dispute existed to preclude a finding, as a matter of law, that Salvatore Imbraguglio was the statutory employee of Super Fresh. We issued a *writ of certiorari* to consider A & P's claim of immunity and the contention that Super Fresh served as Salvatore Imbraguglio's legal employer.

## II.

At the outset, we observe that summary judgment may be granted only when there is no dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Maryland Rule 2–501(a); *Bowen v. Smith*, 342 Md. 449, 454, 677 A.2d 81, 83 (1996); *White v. Friel*, 210 Md. 274, 285, 123 A.2d 303, 308 (1956). In that regard, our review of the case *sub judice* is identical to that undertaken by the Court of Special Appeals.

## III.

### a.

The first issue raised by A & P is a question of law. Our review is therefore expansive. A & P primarily contends that as the workers' compensation insurer for SDS and Super Fresh, it is immune from suit to the same extent that SDS, as the employer, is immune from employee suits stemming from

work related injuries and death. The Workers' Compensation Act provides in pertinent part under § 9–509:

"**Exclusivity of compensation.**

(a) *Employers.*—Except as otherwise provided in this title, *the liability of an employer under this title is exclusive.*

(b) *Covered employees and dependents.*—Except as otherwise provided in this title, the compensation provided under this title to a covered employee or the dependents of a covered employee is in place of any right of action against any person.

(c) *Exception—Failure to secure compensation.*—(1) If an employer fails to secure compensation in accordance with this title, a covered employee who has sustained an accidental personal injury, compensable hernia, or occupational disease or, in case of death, the personal representative of the covered employee may:

(i) bring a claim for compensation under this title; or

(ii) bring an action for damages.

\* \* \* \* \* \*

(d) *Same—Deliberate act.*—If a covered employee is injured or killed as the result of the deliberate intent of the employer to injure or kill the covered employee, the covered employee or, in the case of death, the surviving spouse, child, or dependent of the covered employee may:

(1) bring a claim for compensation under this title; or

(2) bring an action for damages against the employee."
(Emphasis added in part (a), *supra* ).

Section 9–509 vindicates an essential and basic tenet of workers' compensation law—limited employer liability. In exchange, injured employees are provided the prospect of swift and sure compensation, without regard to fault, under other provisions of the Act. First struck in 1914, that beneficial social contract continues unabated. *See Polomski v. Mayor & City Council of Baltimore,* 344 Md. 70, 76–77, 684 A.2d 1338,

1340–41 (1996); *DeBusk v. Johns Hopkins Hosp.*, 342 Md. 432, 437–38, 677 A.2d 73, 75–76 (1996).

The Act, however, neither excuses third-parties from their own negligence nor limits their liability.[4]  Section 9–901 allows injured employees, or their personal representatives either to (1) file a claim for benefits under the workers' compensation title; or (2) bring a third-party action against the person or persons responsible for the injury or death.  If the employee or their personal representative enforces the compensation remedy under the Act, § 9–902 permits the self-insured employer, the insurer, the Subsequent Injury Fund,[5] or the Uninsured Employers' Fund[6] to bring an action for damages against the negligent third-party responsible for the injury or death of the employee.  If the self-insured employer, the insurer, the Subsequent Injury Fund, or the Uninsured Employers' Fund fails to do so within two months after an award by the Workers' Compensation Commission, the injured employee or their personal representative may then proceed against a negligent third-party, notwithstanding the payment of workers' compensation benefits.[7]

---

4.  *See* 2A Arthur Larson, *The Law of Workmen's Compensation* § 71.10 (1996) ("It should never be forgotten that the distortions of our old-fashioned fault concepts that have been thought advisable for reasons of social policy are exclusively limited to providing an assured recovery for the injured person;  they have never gone on—once the injured person was made whole—to change the rules on how the ultimate burden was borne. . . .  [I]t is elementary that if a stranger's negligence was the cause of injury to claimant in the course of employment, the stranger should not be in any degree absolved of his normal obligation to pay damages for such an injury.").

5.  The Subsequent Injury Fund is a device to limit further, under certain circumstances, an employer and insurer's liability for injuries subsequent to an permanent impairment that substantially increases the effect of the previous injury.  *See* §§ 9–801 to 9–808.

6.  Injured employees of employers who fail to secure workers' compensation insurance in accordance with § 9–402 may generally recover workers' compensation benefits from the Uninsured Employers' Fund. *See* § 9–1002.

7.  Section 9–902 provides in relevant part
    "**§ 9–902. Action against third party after award or payment of compensation.**

Although the Act expressly preserves a right of action against third-party tortfeasors, identifying an entity as such has been the subject of considerable dispute. A & P, in its role as the workers' compensation insurer, seeks to cloak itself with the limited liability expressly provided for employers by § 9–509 of the Act.

**b.**

*Flood v. Merchants Mutual Ins. Co.*, 230 Md. 373, 187 A.2d 320 (1963), upon which A & P heavily relies, first addressed the issue of insurer immunity for acts of its own negligence. In *Flood*, this Court rejected a workers' compensation claimant's argument that his employer's workers' compensation insurer was amenable to suit for allegedly failing to select competent physicians in evaluating and treating his work-related injuries. Our predecessors reasoned that former Md. Code (1957), Art. 101, § 58 evidenced an intent by the Legislature to identify the workers' compensation insurer with the employer. The Court relied upon provisions in former Art. 101, § 58, now codified in relevant part and with minor and

(a) *Action by self-insured employer, insurer, or fund.*—If a claim is filed and compensation is awarded or paid under this title, a self-insured employer, an insurer, the Subsequent Injury Fund, or the Uninsured Employers' Fund may bring an action for damages against the third party who is liable for the injury or death of the covered employee.

(b) *Recovery of damages exceeding compensation and other payments.*—If the self-insured employer, insurer, Subsequent Injury Fund, or Uninsured Employers' Fund recovers damages exceeding the amount of compensation paid or awarded and the amount of payments for medical services, funeral expenses, or any other purpose under Subtitle 6 of this title, the self-insured employer, insurer, Subsequent Injury Fund, or Uninsured Employers' Fund shall:

(1) deduct from the excess amount its costs and expenses for the action; and

(2) pay the balance of the excess amount to the covered employee or, in case of death, the dependents of the covered employee.

(c) *Action by covered employee or dependents.*—If the self-insured employer, insurer, Subsequent Injury Fund, or Uninsured Employers' Fund does not bring an action against the third party within 2 months after the Commission makes an award, the covered employee or, in case of death, the dependents of the covered employee may bring an action for damages against the third party."

unrelated changes at §§ 9–901 and 9–902 of the Act,[8] which "provide[d] if it is necessary for the employer or insurance company to pay benefits to an employee for injuries sustained which are due to a third party's negligence, the self-insured employer, 'insurance company, association or the State Accident Fund,' may enforce for their own benefit the third party's liability." *Flood,* 230 Md. at 377, 187 A.2d at 322. Acknowledging that Maryland's Workers' Compensation Act allows third-party actions against "person[s] other than the employer," the Court concluded that "the employer and the insurer [are] one and the same as far as the exclusivity of the remedy is concerned" and for that reason, the complainant could not maintain an independent action against the workers' compensation insurer for "alleged malpractice of the physicians recommended by it to the [complainant]." *Id.* at 378, 187 A.2d at 323.

Although not dispositive, the Court's decision was influenced in part by a notion advanced by the United States District Court for the Eastern Division of the Northern District of Washington in *Schulz v. Standard Accident Ins. Co.,* 125 F.Supp. 411 (E.D.Wash.1954). In *Schulz,* the federal district court was faced with the application of Idaho law. The crux of the court's opinion was that although the Supreme Court of Idaho sanctioned third-party actions against negligent physicians under Idaho's Workers' Compensation Act, it did not allow third-party actions against the workers' compensation insurer. The *Schulz* court concluded that to do so would run contrary to the subrogation provisions of the act, leaving both the employer and the insurer subrogated to no one other than themselves. *Schulz,* 125 F.Supp. at 415 (citing *Hancock v. Halliday,* 65 Idaho 645, 150 P.2d 137 (1944)).

Three years later, the Federal District Court for the District of Maryland applied *Flood* in a case involving not medical malpractice, but allegations that the workers' compensation insurer negligently performed a safety inspection at the in-

8. *See* Ch. 8, § 2 of the Acts of 1991.

sured's workplace, thereby causing the employee's injuries. In rejecting the claim on exclusivity grounds, the federal district court observed:

"On its facts, *Flood* thus holds that when an insurer is performing the duty of an insured employer imposed on him by Article 101, it obtains the employer's immunity to suit for tort liability. In this case the duty which the insurer is charged with performing negligently is not a duty imposed on the employer by Article 101, but it is a duty which is imposed on the employer at common law. An employer has the duty to provide a reasonably safe place to work, and this includes the duty to make inspections and to take safety measures in fulfillment of that obligation. *See [M.A.] Long Co. v. State Accident Fund*, 156 Md. 639, 144 A. 775 (1929).... If it be held, as it was in *Flood*, that an insurer is immune from tort liability when it performs a duty imposed on the employer by the Workmens' Compensation Act, no discernable reason is apparent why it should not also be immune when performing a duty imposed on the employer at common law, just as the employer is immune when performing either class of duties."

*Donohue v. Maryland Casualty Co.*, 248 F.Supp. 588, 591 (D.Md.1965), *aff'd*, 363 F.2d 442 (4th Cir.1966); *see also Young v. Hartford Accident & Indemnity Co.*, 303 Md. 182, 492 A.2d 1270 (1985).

Taken to its logical extreme, *Flood*, as urged by A & P, stands for the proposition that an employee can never maintain an action sounding in tort against his employer's workers' compensation carrier for alleged acts of negligence that result in a work-related injury.[9]  We disagree.  The holding in *Flood* was not so broad.

A & P seizes upon dicta in *Flood* where this Court stated that "[c]onsidering the employer and the insurer to be one and the same as far as the exclusiveness of the remedy is con-

---

**9.** Obviously, if the negligence of a workers' compensation insurer injures an employee of its insured outside the employment context, a direct action unencumbered by the Workers' Compensation Act would certainly lie.

cerned, the [c]laimant is precluded from maintaining his action under this section." 230 Md. at 378, 187 A.2d at 323. The holding, however, was limited to malpractice actions in which a carrier-recommended physician's negligence allegedly aggravated an employee's injury.

Further, the services undertaken by the insurer in both *Flood* and *Donohue* which allegedly resulted in the employee's injuries were duties imposed upon the employer by, respectively, either the Workers' Compensation Act [10] or the common law.[11] The carrier, as an integral part of the workers' compensation system and as part of the insurance contract, merely assisted the employer in the fulfillment of those duties.

In the case *sub judice*, A & P is charged with negligence in its capacity as a property owner, not as a workers' compensa-

---

**10.** For example, § 9–660 of the Act provides in relevant part:

"**§ 9–660. Provision of medical services and treatment.**

(a) *In general.*—In addition to the compensation provided under this subtitle, if a covered employee has suffered an accidental personal injury, compensable hernia, or occupational disease the employer *or its insurer* promptly shall provide to the covered employee, as the Commission may require:

(1) medical, surgical, or other attendance or treatment;

(2) hospital and nursing services;

(3) medicine;

(4) crutches and other apparatus; and

(5) artificial arms, feet, hands, and legs and other prosthetic appliances.

(b) *Duration.*—The employer or its insurer shall provide the medical services and treatment required under subsection (a) of this section for the period required by the nature of the accidental personal injury, compensable hernia or occupational disease." (Emphasis added).

\* \* \*

At the time of the *Flood* decision, these provisions were located at Md.Code (1957), Art. 101, § 37 and were recodified and amended by Ch. 8, § 2 of the Acts of 1991.

**11.** Under the common law, an employer owed an employee the duty to provide a reasonably safe workplace. *M.A. Long Co. v. State Accident Fund*, 156 Md. 639, 650, 144 A. 775 (1929). First statutorily mandated by Ch. 44, § 1 of the Acts of 1955 at Md. Code (1951, 1957 Cum.Supp.), Art. 89, § 17, that duty is currently codified and amended as Md. Code (1991 Repl.Vol., 1996 Supp.), § 5–104 of the Labor and Employment Article.

tion insurer or for any acts it undertook pursuant to that role. For that reason alone, *Flood* and *Donohue* are inapposite.

In *Young v. Hartford Accident & Indemnity Co., supra,* (which was in part a medical malpractice action against the insurer) we recognized, without adopting, Professor Larson's recommended solution to the "problem" of carrier liability. He suggests that

> " '[A] distinction should be drawn between the carrier's function of *payment* for benefits and services, on the one hand, and, on the other, any function it assumes in the way of direct or physical performance of services related to the act. For negligent performance of the latter it should be liable in tort as a 'person other than the employer' [as those words are used in § 9–901 of the Act]."

*Young,* 303 Md. at 195, 492 A.2d at 1276 (citing 2A Arthur Larson, THE LAW OF WORKMEN'S COMPENSATION § 72.97 (1996)). Under Professor Larson's view, "it is virtually impossible to cause physical injury by writing a check. It is very possible to cause physical injury by administering medical treatment to a patient or by making a safety inspection." Larson, *supra,* § 72.97. As we have indicated, A & P's alleged negligence has nothing whatsoever to do with its coincidental status as Mr. Imbraguglio's employer's workers' compensation insurer.

As in *Young,* we need not accept or reject Professor Larson's suggested approach to carrier liability. Nor are we inclined, at this juncture, to adopt the approach taken by the federal district court in *Donohue.* Neither is applicable here. As the intermediate appellate court pointed out, "the instant case is no different than any other case presenting similar circumstances," *i.e.,*—a land owner who injures a business invitee through an alleged act of negligence.

Under A & P's view, if an employee furthering his employer's business, visits the place of business of his employer's insurance carrier and is injured through an act of the insurer's negligence, vicarious or otherwise, the former cannot maintain an action in tort against the insurance company simply because the latter was ultimately financially responsible for the

workers' compensation claim filed by the injured employee. To "underscore[ ] the folly of the Court of Special Appeals' rule" to the contrary, A & P points out that a judgment in favor of the employee would leave the insurer subrogated only to itself.

A & P's contention is not entirely correct. If the workers' compensation insurer is vicariously liable, it is entitled to indemnification from its negligent employee(s). *Chilcote v. Von Der Ahe Van Lines,* 300 Md. 106, 121, 476 A.2d 204, 212 (1984) (citing *Pennsylvania Threshermen & Farmers' Mutual Cas. Ins. Co. v. Travelers Ins. Co.,* 233 Md. 205, 215–16, 196 A.2d 76, 81 (1963)). Further, any recovery by an injured employee after receiving workers' compensation benefits is subject to § 9–902 of the Act. Subsection (e) of § 9–902 provides:

"(e) *Distribution of damages.*—If the covered employee or the dependents of the covered employee recover damages, the covered employee or dependents:

(1) first, may deduct the costs and expenses of the covered employee or dependents in the action;

(2) next shall reimburse the self-insured employer, insurer, Subsequent Injury Fund, or Uninsured Employers' Fund for:

(i) the compensation already paid or awarded; and

(ii) any amounts paid for medical services, funeral expenses, or any other purpose under Subtitle 6 of this title; and

(3) finally, may keep the balance of the damages recovered."

Under § 9–902(e), a successful judgment against the insurer simply means that the insurer is entitled to offset any judgment entered against it for amounts already paid pursuant to its obligation as the workers' compensation insurer.

■ In sum, a workers' compensation self-insurer cannot use its status as such to shield itself from the normal obligations attendant upon those acts unrelated to its role as a workers' compensation insurer. If A & P wishes to assume

multiple identities, it must concomitantly shoulder the risks independently associated with those identities.

## IV.

■ For both their parts, Super Fresh and A & P claim that the circuit court correctly determined that, as a matter of law, they were the decedent's "consolidated" or "dual" employers, thereby barring Mrs. Imbraguglio's suit under the exclusivity provisions of § 9–509 of the Act. Super Fresh also independently asserts that it was the decedent's statutory employer within the meaning of § 9–508 of the Act—an assertion we take up in part V., *infra*.

■ Ordinarily, the existence of the employer/employee relationship is a question reserved for the fact finder. *Mackall v. Zayre Corp.*, 293 Md. 221, 230, 443 A.2d 98, 103 (1982). When, however, the existence of the relationship is undisputed, or the evidence on the issue is uncontroverted, unless conflicting inferences can be drawn from that evidence, the trial court is entitled to treat the matter as a question of law. *Whitehead v. Safway Steel Products*, 304 Md. 67, 76, 497 A.2d 803, 808 (1985). In the present case, however, we cannot conclude that the record is sufficient to warrant the trial court's conclusion on summary judgment that the decedent was simultaneously an employee of SDS, Super Fresh, and A & P.

In *Whitehead, supra,* a worker employed by a temporary services agency was injured while working for Safway Steel Products ("Safway"), a company to which he was assigned. After receiving workers' compensation benefits from the agency, he brought a negligence action against Safway. Significantly, Whitehead conceded that "all control of specific tasks while he was at Safway belonged entirely to Safway." *Whitehead,* 304 Md. at 76, 497 A.2d at 808.

In considering the matter, we surveyed our prior decisions and concluded that the determination of the employer/employee relationship is properly based on five factors. They include "(1) the power to select and hire the employee, (2) the

payment of wages, (3) the power to discharge, (4) the power to control the employee's conduct, and (5) whether the work is part of the regular business of the employer." 304 Md. at 77–78, 497 A.2d at 808–09 (citing *Mackall v. Zayre Corp.*, 293 Md. 221, 230, 443 A.2d 98, 103 (1982)); *see also Keitz v. National Paving and Contracting Co.*, 214 Md. 479, 491, 134 A.2d 296, 301 (1957). Of these five, control is paramount and, in most cases, decisive. 304 Md. at 78, 497 A.2d at 809 (and cases cited). After noting that Safway "instructed Whitehead on the tasks to be performed, supervised his work, [ ] was free to assign him to any other duties that warranted attention," and contributed to Whitehead's workers' compensation insurance premium, we concluded that the trial court properly granted judgment n.o.v. in favor of Safway, because as a matter of law, Whitehead was both an employee of Safway and of his temporary services agency. *See Mackall, supra*, 293 Md. at 229, 443 A.2d at 102 (worker may simultaneously be employee of two employers).

That an employee can concurrently serve two employers is not a novel concept in Maryland law. Indeed, our predecessors considered the issue over sixty years ago in *Saf-T-Cab Service, Inc. v. Terry*, 167 Md. 46, 172 A. 608 (1934). In *Saf-T-Cab*, Terry, a taxicab driver, suffered injuries while operating his cab in Baltimore City. Although the Motor Cab Company, Inc. owned the taxicab that Terry was driving when he was injured, the Saf-T-Cab Service, Inc. concerned itself with the cab's operation.

In considering Terry's claim for workers' compensation benefits, the State Industrial Accident Commission,[12] concluded that for the purposes of his claim, Terry was solely the employee of the Motor Cab Company, Inc. Terry appealed that decision to the Superior Court of Baltimore City. The insurer for Saf-T-Cab, on behalf of itself and its insured,

---

12. The State Industrial Accident Commission preceded the Workers' Compensation Commission, but served the same function. *See* Ch. 800, § 1 of the Acts of 1914 as amended by Ch. 884, § 1 of the Acts of 1957; *see also Polomski v. Mayor and City Council of Baltimore*, 344 Md. 70, 76 n. 5, 684 A.2d 1338, 1341 n. 5 (1996).

moved to have the appeal dismissed and a verdict directed in its favor in accordance with the Commission's order. The court denied that request and a jury subsequently concluded that Terry was also an employee of Saf–T–Cab. Saf–T–Cab and its insurer appealed seeking review of the circuit court's refusal to grant them a directed verdict.

After considering, *inter alia*, the lower court's refusal to grant Saf–T–Cab's motion, the Court noted that

"[t]he record attributes no corporate purpose to either corporation except the prosecution of the taxicab enterprise in which the claimant was employed by the executive to whom the management of both corporations was committed. It was testified by that official, and by the claimant, that the employment under consideration was on behalf of the Saf–T–Cab Service, Inc., while there were entries on the records of the Motor Cab Company indicating that it was [Terry's] employer. Both corporations were functioning at the time of the claimant's employment and injury, and were depositing in the same bank account the proceeds of the transportation business to which his service contributed. *Under [these] circumstances, we think the trial court was right in declining to rule as a matter of law that the Saf–T–Cab Service, Inc. was not an employer of [Terry] ...*"

167 Md. at 49, 172 A. at 609 (emphasis added).

In the instant case, the parties agree that the decedent worked for SDS in a warehouse managed by Super Fresh and owned by A & P. It is also undisputed that SDS and Super Fresh are corporate subsidiaries of A & P, over which A & P exercises some measure of control. There, the agreement ends.

■ A & P and Super Fresh trumpet our holding in *Whitehead, supra*, to assert that, inasmuch as Mrs. Imbraguglio's complaint alleged some measure of control over the decedent's workplace by the Petitioners, *a fortiori*, the decedent was an employee of those who exercised that control. Petitioners confuse control of the workplace with control of the worker.

Unlike the employee in *Whitehead*, there is no concession from Mrs. Imbraguglio that her husband was in any way controlled by either A & P or Super Fresh, or under their direct managerial authority as was the workers' compensation claimant in *Saf–T–Cab* (and even then, the trial judge deferred to the jury). There is no evidence from which the trial court could have concluded, as a matter of law, that (1) A & P or Super Fresh possessed the power to select and hire the decedent, or that (2) someone other than SDS paid his wages, (3) had the power to discharge him, or (4) had the power to control his conduct. *See Whitehead*, 304 Md. at 77–78, 497 A.2d at 808. At best, the record evidence cuts both ways.

' ■ Notwithstanding Petitioners' assertions to the contrary, Mrs. Imbraguglio's Amended Complaint merely alleges that A & P, as owner of the subject premises, owed her husband a duty of care to maintain the premises in a safe condition, and that by failing to do so, caused his death. Super Fresh's complicity in the accident is alleged to have resulted from its encouraging employees of SDS to engage in "unsafe practices" along with A & P. There are no direct allegations or permissible inferences to the effect that A & P or Super Fresh maintained the necessary control over the decedent which is the hallmark of the employer/employee relationship.[13]

■ Issues of control aside, A & P individually asserts that as the parent corporation, it should enjoy the same immunity as its subsidiary, SDS, under § 9–509 of the Act. The United States District Court for the District of Maryland considered this issue in *McClelland v. Goodyear Tire & Rubber Co.*, 735 F.Supp. 172 (D.Md.1990), *aff'd*, 929 F.2d 693 (4th Cir.1991). McClelland was a worker at K–S, a corporate subsidiary of the

---

13. We observed in *Whitehead* that "the trial court should take great pains to ensure that conflicting inferences are not possible on the presented evidence." Because of the increasing complexity of the employer/employee relationship, we believe that in multi-party cases, the employer/employee relationship will most often be a question of fact, not of law. *Whitehead v. Safway Steel Products*, 304 Md. 67, 76, 497 A.2d 803, 808 (1985).

Goodyear Tire & Rubber Company ("Goodyear"). Precluded from seeking damages for his occupational injuries against K–S in tort, McClelland brought suit against Goodyear for allegedly providing certain toxic tire-manufacturing chemicals without regard to the health of the K–S employees.

In addressing, *inter alia*, the applicability of the exclusivity provisions of our Workers' Compensation Act, the federal district court concluded that

> "where as here, the *particular practices causing the plaintiff's injury* are said to be so dominated and controlled by the corporate parent that the actual employer is a mere captive of that parent (as was conceded by the plaintiff in the filing cited *ante* ), then it would frustrate the purposes of the workers' compensation law, *i.e.*, to give both employee and employers a sure, yet simple and exclusive source of compensation for occupational diseases, if the Court were to disregard the actuality of corporate control over the allegedly injurious practices and hold that the corporate parent was not an employer for workers' compensation purposes."

*McClelland,* 735 F.Supp. at 175. Unfortunately, the only Maryland authority the federal court relied upon was *Dolan v. Kent Research & Mfg.*, 63 Md.App. 55, 491 A.2d 1226 (1985), *cert. denied,* 304 Md. 298, 498 A.2d 1185 (1985)—a case, we note, which *reversed* a trial court for failing to apply the employer/employee relationship test announced in *Mackall* and *Whitehead, supra.* As the intermediate appellate court pointed out, "employer immunity … depends upon the existence of an employer/employee relationship, *i.e.*, that a company so controls the claimant as to be his employer." *Dolan,* 63 Md.App. at 65, 491 A.2d at 1231. The federal court failed to undertake an analysis of the relationship between the injured employee and his employer's parent corporation. In that regard, the authoritative value of *McClelland* is suspect.

Significantly, the federal court ignored the separate legal identities Goodyear and K–S possessed in the eyes of the law. The suggestion that "the *particular practices causing the plaintiff's injury* are said to be so dominated and controlled

by the corporate parent that the actual employer" is a captive of the parent, primarily defines the relationship between the parent and the subsidiary, not between the parent and the injured employee.

As the trial court in the instant case acknowledged, companies establish distinct corporate subsidiaries for a variety of reasons. Among those reasons are tax advantages, organizational preferences, and, of course, limitation of liability. In any other context, A & P would assert its legal individuality and seek to shield itself from liability for the negligent acts of its subsidiaries. Yet ironically, it is that very distinctness that A & P now seeks to disavow. *See* Larson, *supra*, at § 72.40 (parent corporations vulnerable to the argument that having deliberately set up corporate separateness for its own purposes should not be heard to disavow that separateness when advantageous to do so); Annotation, *Workers' Compensation Immunity as Extending to One Owning Controlling Interest in Employer Corporation*, 30 A.L.R.4th 948 (and cases collected therein).

■ To be sure, we are not suggesting parent corporations are invariably precluded from enjoying tort immunity from suits by injured employees of their subsidiaries. Immunity will flow to the parent to the extent that it functions as the injured employee's employer under the test articulated in *Mackall, Whitehead,* and *Saf-T-Cab, supra.* Otherwise, the parent is liable to the same extent as any other third-party for its own negligent acts causing injury to the employee of another.

■ It must be emphasized, however, that the amenability of a parent corporation to an action in tort in no way establishes liability on the parent's part. Like any tort action, the plaintiff must still establish all elements of a claim against the parent. *See* 1 Fletcher CYCLOPEDIA OF THE LAW OF CORPORATIONS § 43.80 (1990 & 1996 Cum.Supp.) (and cases cited therein).

## V.

As alluded to in Part IV., *supra*, Super Fresh alone seeks "statutory employer" status under § 9–508 of the Act. Section 9–508 holds principal contractors (or statutory employers) absolutely liable for the payment of workers' compensation benefits to injured employees of subcontractors. *Para v. Richards Group of Washington, Ltd.*, 339 Md. 241, 253–54, 661 A.2d 737, 744 (1995); *Lathroum v. Potomac Elec. Power Co.*, 309 Md. 445, 448, 524 A.2d 1228, 1229 (1987). This ensures that employers who would otherwise evade their responsibility for carrying workers' compensation insurance by subdividing their operations through contract are precluded from doing so. *Roland v. Lloyd E. Mitchell, Inc.*, 221 Md. 11, 19, 155 A.2d 691, 696 (1959). In exchange for guaranteed compensation, injured employees of subcontractors are ordinarily barred from suing the principal contractor in tort, the latter being entitled to the protection of the exclusivity provisions of § 9–509. *Para, supra*, 339 Md. at 253–54, 661 A.2d at 744; *State v. Benjamin F. Bennett Bldg. Co.*, 154 Md. 159, 163, 140 A. 52, 53–54 (1928).

In order for a contractor to be considered the statutory employer of another contractor's employee, § 9–508 of the Act, like its predecessor, former Md. Code (1957, 1985 Repl. Vol., 1990 Cum.Supp.), Art. 101, § 62,[14] requires two contracts:

"one between the principal contractor and a third party whereby it is agreed that the principal contractor will execute certain work for the third party, and another between the principal contractor and a person as subcontractor whereby the subcontractor agrees to do the whole or part of such work for the principal contractor."

339 Md. at 249, 661 A.2d at 742 (quoting *Honaker v. W.C. & A.N. Miller Dev. Co.*, 278 Md. 453, 460, 365 A.2d 287, 291 (1976)). In this context, Super Fresh asserts that the record

---

**14.** Md. Code (1957, 1985 Repl. Vol., 1990 Cum.Supp.), Art. 101, § 62 was transferred to § 9–508 of the Labor and Employment Article with revisions by Ch. 8 of the Acts of 1991.

conclusively establishes that as the principal contractor, it entered into an agreement with A & P to manage A & P's supermarket operations in the State of Maryland. As a necessary and vital part of that obligation, Super Fresh, in turn, subcontracted with SDS to provide warehousing and supply services for those supermarkets. Therefore, the argument goes, Super Fresh is entitled to judgment as a matter of law as the statutory employer of the decedent.

Respondent, although conceding the existence of a business association among A & P, SDS, and Super Fresh, disputes the conclusion that Super Fresh and SDS share the principal/subcontractor relationship. Viewing the evidence and all reasonable inferences therefrom in Respondent's favor, as we must, *Dobbins v. Washington Suburban Sanitary Comm'n.,* 338 Md. 341, 345, 658 A.2d 675, 677 (1995), we cannot hold that as a matter of law Super Fresh and SDS share such a relationship.

To its Motion for Summary judgment, Super Fresh appended the sworn affidavit of one Mary Ellen Offer, Vice President, Assistant Corporate Secretary, and Senior Counsel for A & P. In her affidavit, Offer attested, in relevant part, that based upon her personal knowledge, "[SDS] and Super Fresh . . . have a contractual relationship: [SDS] provides warehousing and distribution services to Super Fresh[.]" Offer also attested that "Super Fresh . . . and [A & P] have a contractual relationship: Super Fresh . . . operates the retail supermarket operations of [A & P]." In her Answer, Respondent alleged, without a supporting affidavit or other evidence, that Super Fresh failed to show the existence of the requisite contractual relationship.

Super Fresh is quick to point out that under Md. Rule 2-501(b)

"[w]hen a motion for summary judgment is supported by an affidavit or other statement under oath, an opposing party who desires to controvert any fact contained in it may not rest solely on the allegations in the pleadings, but shall support the response by an affidavit or other written statement under oath."

Because, Super Fresh argues, Respondent failed to support properly her response to its Motion for Summary Judgment "by an affidavit or other written statement under oath," she "conceded the truth of [Petitioners'] affidavit." Respondent counters by pointing out that Offer's statement would not have been admissible into evidence, and we agree.

■ Maryland Rule 2–501(c) requires that "an affidavit supporting . . . a motion for summary judgment shall be made upon personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matter stated in the affidavit." In other words, an affiant must attest to personal knowledge of the facts asserted and a basis for that knowledge. *A.J. Decoster Co. v. Westinghouse Electric Corp.*, 333 Md. 245, 263, 634 A.2d 1330, 1339 (1994). *See also Wyand v. Patterson Agency, Inc.*, 266 Md. 456, 458, 295 A.2d 773, 774 (1972) ("If a grant of summary judgment is to be affirmed, there must be adherence to the controlling Rules of Procedure.").

Even assuming (and we will not) that Offer is competent to testify in her capacity as Vice President, Assistant Corporate Secretary, and Senior Counsel for A & P regarding a contractual relationship between A & P and Super Fresh, her affidavit contains no assertion or recitation of facts that her official duties gave her reason to have personal knowledge of a contract, much less a principal/subcontractor relationship, between Super Fresh and SDS or that she otherwise has authority to speak for parties other than her immediate employer, A & P. Her bald assertions are insufficient to sustain a motion for summary judgment. *See A.J. Decoster Co., supra.* Thus, Respondent's failure to controvert a defective affidavit has no legal consequence and certainly cannot form the basis of a summary judgment against her.

■ Super Fresh also insists that because Respondent acknowledged in her pleadings below and continues to acknowledge that there is "a distribution system" among SDS, Super Fresh, and A & P she has, in effect, conceded the

existence of a contractual relationship between the parties. The existence of a "distribution system," while evidence of a business relationship among A & P, Super Fresh, and SDS, by no means conclusively establishes the necessary principal/subcontractor relationship between Super Fresh and SDS.

We have previously defined a subcontract as "a contract with a person who owes labor or services under another contract, to perform some or all of the services or labor due." *Para, supra,* 339 Md. at 249, 661 A.2d at 742. The record lacks conclusive evidence concerning the substance of the contractual obligations, if any, between SDS and Super Fresh, and any concomitant obligations to A & P. Simply because three entities do business with each other does not render any two of them principal and subcontractor. As Respondent points out, it can be reasonably inferred that Super Fresh enters into multiple buy/sell agreements with SDS to restock its stores. The "distribution system" conceded by Respondent is insufficient for us to conclude, as a matter of law, that Super Fresh and SDS share the principal/subcontractor relationship. Since the existence of that relationship is material to whether Respondent can maintain her suit against Super Fresh and is still in dispute, Super Fresh was not entitled to summary judgment on the ground that it served as the decedent's statutory employer. *See White v. Friel, supra,* 210 Md. at 285, 123 A.2d at 308.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY THE PETITIONER.*